**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>  v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Civil Action No. 6:20-cv-454 |

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................................... 2

    A.    The '160 Patent ................................................................................................................ 2

    B.    The Accused Azure Monitor Service.............................................................................. 3

APPLICABLE LAW ....................................................................................................................... 5

ARGUMENT ................................................................................................................................... 6

    A.    WSOU's Complaint Fails To Assert a Plausible Claim of Direct Infringement. .......... 6

        1.    The complaint illogically alleges that the same metrics are both the network "parameter values" and the "service indicator" value determined as a function of those "parameter values." ............................................................................... 6

        2.    The complaint also fails to allege that Azure Monitor uses multiple network "parameter values" to determine a "service indicator" value. .......................... 8

        3.    The compliant fails to allege infringement under the doctrine of equivalents. ................................................................................................................................ 10

    B.    WSOU's Complaint Fails To Assert a Plausible Claim of Induced Infringement. .... 10

    C.    WSOU's Complaint Fails To Assert a Plausible Claim of Contributory Infringement. ................................................................................................................................ 11

CONCLUSION.............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................5

*Bartonfalls LLC v. Turner Broad. Sys.*,
   No. 2:16-cv-1127, 2017 WL 1375205 (E.D. Tex. Mar. 15, 2017) ..........................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................10

*Chapterhouse, LLC v. Shopify, Inc.*,
   No. 2:18-cv-300, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ............................................6

*De La Vega v. Microsoft Corp.*,
   No. 6:19-cv-00612, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ...................................5, 9

*e.Digital Corp. v. iBaby Labs, Inc.*,
   No. 3:15-cv-05790, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ........................................9

*Engel Indus., Inc. v. Lockformer Co.*,
   96 F.3d 1398 (Fed. Cir. 1996) .................................................................................................7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ...............................................................................................6

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*,
   72 F. Supp. 3d 521 (D. Del. 2014) ..........................................................................................3

*In re Bill of Lading Transmission and Processing System Patent Litigation*,
   681 F.3d 1323 (Fed. Cir. 2012) .........................................................................................9, 11

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) ..............................................................................................................10

*Macronix International Co. v. Spansion Inc.*,
   4 F. Supp. 3d 797 (E.D. Va. 2014) .......................................................................................10

*Novitaz, Inc. v. inMarket Media, LLC*,
   5:16-cv-06795, 2017 WL 2311407 (N.D. Cal. May 16, 2017) ........................................5, 10

*Portus Singapore Pte Ltd. v. SimpliSafe, Inc.*,
   No. 1:19-cv-480, 2019 WL 6071180 (D. Del. Nov. 15, 2019) ...............................................9

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
   No. 1:15-cv-152, 2016 WL 927143 (D. Del. Mar. 4, 2016) ................................................. 5, 9

*SuperInterconnect Techs. LLC v. HP Inc.*,
   No. 1:19-cv-169, 2019 WL 6895877 (D. Del. Dec. 18, 2019) ................................................. 5

*ZitoVault, LLC v. Int'l Bus. Mach. Corp.*,
   No. 3:16-cv-0962, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) ........................................... 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 3, 5

Defendant Microsoft Corporation ("Microsoft") respectfully requests the Court dismiss the sole count for infringement of U.S. Patent No. 7,366,160 ("the '160 patent") in Plaintiff WSOU Investments, LLC's ("WSOU's" or "Plaintiff's") complaint pursuant to Fed. R. Civ. P. 12(b)(6). Even if the Court accepts WSOU's factual allegations as true, the accused Microsoft service cannot plausibly meet each limitation of the asserted patent's claims.

## INTRODUCTION

Even in these topsy turvy times, an egg is not an omelet. Of course, we can cook an egg to make an omelet, but an omelet is not the egg we started with, at least because it has been cooked. For WSOU's complaint to be plausible, however, we would have to accept that our omelet, even after cooking, is the same as the egg. In its complaint, WSOU alleges that the accused Microsoft service's "metrics" are simultaneously the network "parameter values" (eggs) required by the '160 patent's claims ***and*** the "service indicator" value (omelet) that, per the claims, are determined "as a function of" those "parameter values." The complaint's allegations defy logic and contradict the plain English of the claims; they are implausible. A "network parameter" value (egg) and a "service indicator" value (omelet) that must be determined ***based on*** network "parameter values" (eggs) cannot be the same. On that basis alone, WSOU's complaint should be dismissed.

But even if WSOU had alleged that the accused metrics were either solely network "parameter values" or a "service indicator" value (leaving one to guess what satisfies the other claim limitation), the complaint would still be deficient. That is because, to continue the analogy, the claims require not just an omelet made from an egg, but additional ingredients as well (*e.g.*, a mushroom omelet). Specifically, the '160 patent's claims require that the "service indicator" value be a function of ***two or more*** network "parameter value*s*" (*e.g.*, egg and mushroom), but the complaint only alleges that metrics are a function of a ***single*** parameter (an

1

egg).  WSOU has thus failed in two independent ways to plausibly allege that the accused Microsoft service meets each recited limitation of the claims.  Therefore, the Court should dismiss WSOU's complaint.

## FACTUAL BACKGROUND

### A.  The '160 Patent

According to the '160 patent, at the time of invention, it was not possible to accurately forecast when a network service (such as a voice call) might fail.  *See* '160 patent, at 1:24–25, 1:47–50.  The patent purports to solve this problem with the method of claim 1.  Most relevant to this motion, claim 1 requires two different limitations, where the second limitation (a "service indicator" value) is a product of processing *multiple* instances of the first limitation (the values of two or more parameters of a network).

> 1.      A method of determining communications network service trends, the method comprising the steps of:
>
> selecting ***two or more parameters of a network*** representative of a network service and variable in time;
>
> measuring and/or calculating at two or more times values of ***the network parameters***;
>
> determining at two or more times the value of a ***service indicator <u>as a function of said measured and/or calculated parameter values</u>***;
>
> determining a trend of the indicator as a function of said determined indicator values, and
>
> determining as a function of the trend of the indicator a time of the service indicator crossing a defined threshold.

'160 patent, at claim 1 (emphasis added).

The patent describes several examples of "network parameters" and "services." "Network parameters" are measurable data such as packet loss, jitter, and bandwidth.  *See id.* at

2

2:64–3:3.  "Services" are the capabilities that a network provides such as telephone calls, videophone calls, and whiteboard services.  *See id.* at 3:11–19.  A "service indicator" value represents the "quality" value of a particular service (*e.g.*, voice quality is good).  *See, e.g.*, Ex. A Response to Non-Final Office Action, June 12, 2007, at 6 ("[a] service indicator (voice quality) is estimated at regular intervals" based on bandwidth and jitter).[1]

### B. The Accused Azure Monitor Service

WSOU accuses Microsoft's Azure Monitor of infringing the '160 patent.  *See* D.I. 1 (Complaint), at ¶¶ 23, 43.  The Azure Monitor service allows a network operator to gather information about the health and performance of the network and its resources.  *See id.* at ¶ 25.  Azure Monitor provides this information to the operator through "metrics" and "logs."  As illustrated in the figure below, information for "metrics" and logs" can be collected from sources such as a web application, an operating system, or the Azure subscription itself.  *See* Complaint, at ¶ 26; Ex. B, at 1–4.[2]

---

[1] On a motion to dismiss, the Court may take judicial notice of public documents such as the patent's prosecution history.  *See ZitoVault, LLC v. Int'l Bus. Machs. Corp.*, No. 3:16-cv-0962, 2018 WL 2971131, at *2 n.4 (N.D. Tex. Mar. 29, 2018); *see also Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014) ("A court may also take judicial notice of the prosecution histories, which are 'public records.'").

[2] On a motion to dismiss, the Court may "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *ZitoVault*, 2018 WL 2971131, at *2 n.4.  In paragraph 25 of its complaint, WSOU references an Azure Network Monitor Document via URL.  However, that URL was non-functional at least as early as June 5, 2020, when counsel for Microsoft first attempted to access it.  Microsoft predominantly relies on the screenshots in the complaint, but submits, for context, Exhibits B & C which are excerpts from what Microsoft understands to be the Azure Network Monitor document that the complaint intended to reference.  Microsoft's counsel accessed this document pursuant to the process described in paragraph 3 of the Declaration of John W. McBride.



Azure Monitor can manipulate or display the collected information in the various ways illustrated on the figure's right. For example, Azure Monitor can display a "Dashboard" to help visualize various network metrics. Complaint, at ¶ 26 ("Visualize" "Dashboards"). It can also be configured to send an alert (*i.e.*, a "near real time" alert) when a metric exceeds a defined threshold. *See id.* at ¶¶ 26–28, 40–42; Ex. B, at 5–7.[3]

WSOU's infringement theory focuses on Azure Monitor's "metrics." *See, e.g.*, Complaint, at ¶¶ 27–29, 32–42 (allegations involving metrics and thresholds for metrics). As alleged in the complaint, metrics are data collected directly from the monitored sources. *See id.* at ¶ 28. Azure Monitor can collect hundreds of metrics across all of its sources, including the specific metrics identified in the complaint: "[t]he end-to-end latency of successful requests" (Success E2E Latency from storage accounts); "[t]he latency used by Azure Storage to process a

---

[3] While not central to the instant motion, Microsoft notes that these alerts are not based on forecasts or predictions, but instead are sent only when a defined threshold is actually exceeded. *See* Complaint, at ¶¶ 26-28, 40-42; Ex. B, at 5.

4

successful request" (Success Server Latency from the same storage accounts); and the average bandwidth of a gateway from virtual networks (Gateway S2S Bandwidth). *See id.* at ¶ 37; Ex. C, at 28–29, 121. Azure Monitor can "automatically" collect these hundreds of metrics, which are examples of the broad categories of metrics—"loss, latency, response time, or bandwidth utilization"—identified in various paragraphs throughout the complaint. *See* Complaint, at ¶ 32; Ex. C, at 1. For WSOU's complaint to plausibly allege infringement, these metrics must somehow be both the claimed network "parameter values" and the "service indicator" values determined as a function of them.

## APPLICABLE LAW

Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the context of patent infringement, a complaint must contain facts which, if taken as true, plausibly establish that the defendant practices each limitation of the patent's claims. *See De La Vega v. Microsoft Corp.*, No. 6:19-cv-00612, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 1:15-cv-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (dismissing complaint because nothing "hints" at the presence of one claim limitation and where the allegation is "not obvious" with respect to another claim limitation); *Novitaz, Inc. v. inMarket Media, LLC*, 5:16-cv-06795, 2017 WL 2311407, at *3 (N.D. Cal. May 16, 2017) ("[I]f a complaint does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied, it is hard to see how infringement would be 'probable.'"). The purpose of this requirement is to provide a defendant with fair notice of the accused conduct. *See, e.g.*, *SuperInterconnect Techs. LLC v. HP Inc.*, No. 1:19-cv-169, 2019 WL 6895877, at *2 (D. Del. Dec. 18, 2019) ("Because SIT's complaint does not show

how HP may infringe, it does not provide HP with fair notice of the basis for SIT's direct infringement claims."); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-300, 2018 WL 6981828, **1–2 (E.D. Tex. Dec. 11, 2018) (holding a complaint must provide notice and that a series of screenshots fails to state a claim).

## ARGUMENT

### A. WSOU's Complaint Fails To Assert a Plausible Claim of Direct Infringement.

WSOU's direct infringement claim should be dismissed because the complaint does not plausibly allege that Azure Monitor satisfies two logically distinct limitations required by the claims: "parameter values" and the "service indicator" value determined as a function of them. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) ("Direct infringement requires a party to perform each and every step or element of a claimed method or product." (citation omitted)).

**1. The complaint illogically alleges that the same metrics are both the network "parameter values" and the "service indicator" value determined as a function of those "parameter values."**

The sole independent claim (claim 1) requires determining a "value of a service indicator *as a function of* [the] measured and/or calculated [network] parameter values." But WSOU relies on Azure Monitor "metrics" to satisfy *both* the network "parameter values" limitation and the "service indicator" value limitation, even though the "service indicator" value is determined "as a function of" the network "parameter values."

Specifically, WSOU alleges that "[t]he Network performance monitor selects the chosen *metric* from loss, latency, response time or bandwidth utilization (i.e., two or more *parameters of a network* representative and variable in time)." Complaint, at ¶ 32 (emphasis added). But to allege that the claimed "service indicator" value is present, WSOU points back to the very same Azure Monitor metrics. *See id.* at ¶ 36 ("Metrics (i.e., *service indicator*) are values that describe

6

aspects of a system." (emphasis added)).  As an example, WSOU alleges that "Bandwidth" is a network "parameter value" ***and*** a "service indicator" value even though the claims require determining one "as a function" of the other.[4]  *Compare id.* at ¶ 37 (asserting that Bandwidth is a "network parameter"), *with id.* at ¶¶ 38–39 (asserting that a metric is a "service indicator," that "[t]he trend of a metric is a function of metric values," and explicitly discussing the "trends of ***metrics*** like Bandwidth").[5]

WSOU's allegations are implausible because they are logically impossible and contradict the claim's wording.  They also contradict the specification, which describes that "network parameters . . . can be identified . . . ***in order to determine*** the level of service," '160 patent, at 2:64–67 (emphasis added), and that a "network parameter" such as "bandwidth stability changes can be calculated and ***used in determining*** the network service indicator," *id.* at 3:4–7 (emphasis added).  If a claim provides for two separate limitations, they "logically cannot be one and the same."  *See Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404–05 (Fed. Cir. 1996).[6]  This logical principle is especially clear in this case, where the claim requires one thing to be determined as a function of another.

In other words, although an omelet was ordered, WSOU's complaint serves up an

---

[4] Although not the subject of this motion, the allegation that Azure Monitor's metrics are "service indicators" is itself implausible because these metrics do not indicate the quality, reliability, or performance of a service.  *See, e.g.*, Ex. A, at 6 ("[a] service indicator (voice quality) is estimated at regular intervals" based on bandwidth and jitter).

[5] WSOU makes similar allegations with respect to Latency.

[6] WSOU cannot sidestep its defective pleading by arguing that a single structure may, in some instances, encompass multiple claim limitations.  As pled, WSOU has an even more fundamental defect in its allegations: it has alleged that a first element (the network parameters) is the same as a separate second element (the service indicator), which the first element must be used to determine.

7

uncooked egg.  Having fallen far short of what is required, the complaint should be dismissed.

### 2. The complaint also fails to allege that Azure Monitor uses multiple network "parameter values" to determine a "service indicator" value.

WSOU's complaint does not plausibly allege that Azure Monitor determines "the value of a service indicator" from *multiple* measured or calculated network "parameter values." Claim 1 requires determining the "value of a service indicator as a function of . . . parameter values."  Per the claim, a "service indicator" value must be determined from more than one "parameter value" because the first two steps require "selecting *two or more* parameters" and measuring or calculating the "value*s* of the [two or more selected] network parameter*s*."  '160 patent, at claim 1 (emphasis added).

But WSOU alleges only that "metrics like Average Bandwidth [are] a function of Bandwidth (i.e., network parameter)"—a single network parameter.  Complaint, at ¶ 37.  While the complaint parrots the "function of" language of claim 1, it does not plausibly allege that any alleged "service indicator" value (here, Average Bandwidth) is determined "as a function of" a *two or more* network "parameter value*s*."  WSOU identifies only one network "parameter value" when the claim expressly requires "two or more."  For this independent reason, WSOU's complaint does not plausibly allege a claim of direct infringement.[7]

This Court recently explained in *De La Vega* that an infringement claim is implausible when the complaint fails to explain how a claim limitation is purportedly satisfied.  In that case,

---

[7] Although not the subject of this motion, metrics such as Success E2E Latency are not "a function of Latency (i.e. network parameter)."  Complaint, at ¶ 37.  The document cited in the complaint explains that Success E2E Latency is the "end-to-end latency of successful requests made to a storage service or the specified API operation."  In other words, Success E2E Latency is not a metric determined "as a function of" latency, but *is* the latency for a specific request operation.  WSOU makes similarly defective allegations with respect to the metrics Average Bandwidth and Success Server Latency.

8

this Court dismissed a direct infringement claim, holding that when a complaint alleges that an limitation is satisfied with nothing more than a series of unexplained screenshots, it "does not state a claim to relief that is plausible on its face." *De La Vega*, 2020 WL 3528411, at \*\*6–7.

The factual allegations here are less plausible than those in *De La Vega*. WSOU has not only failed to explain how the "service indicator" value limitation is met or how the "service indicator" is determined from multiple network "parameter values," WSOU has also advanced allegations that, if true, entirely undermine its infringement case.

Missing requirements are fatal to a complaint. For example, in *Bill of Lading Transmission and Processing System Patent Litigation*, the Federal Circuit held that a contributory infringement claim was properly dismissed because the complaint had alleged facts that, on their face, failed to satisfy one of contributory infringement's elements. 681 F.3d 1323, 1337–39 (Fed. Cir. 2012). Similarly, district courts routinely dismiss direct infringement claims when the complaint fails to plausibly allege how a limitation of the claims would be met. *See, e.g.*, *Bartonfalls LLC v. Turner Broad. Sys.*, No. 2:16-cv-1127, 2017 WL 1375205, at \*2 (E.D. Tex. Mar. 15, 2017) (recommending dismissal because plaintiff "has no plausible basis for alleging that the plain and ordinary meaning of 'TV Channel' (or 'TV Channel' properly construed) covers URLs"), *adopted* 2:16-cv-1127, D.I. 13 (E.D. Tex. Apr. 7, 2017); *Raindance*, 2016 WL 927143, at \*2 (dismissing complaint because it failed to clearly identify certain claim limitations); *Portus Singapore Pte Ltd. v. SimpliSafe, Inc.*, No. 1:19-cv-480, 2019 WL 6071180, at \*5 (D. Del. Nov. 15, 2019) (recommending dismissal because plaintiff had failed to plausibly allege that the defendant (and not a customer) was the claimed "user"); *e.Digital Corp. v. iBaby Labs, Inc.*, No. 3:15-cv-05790, 2016 WL 4427209, at \*4 (N.D. Cal. Aug. 22, 2016) (dismissing complaint because plaintiff failed to map a claim limitation to any support in the complaint);

*Novitaz*, 2017 WL 2311407, at *4 (dismissing complaint because "a number of critical claim elements are not addressed by Novitaz's factual allegations").

Returning to the original analogy, WSOU's complaint gives us a single uncooked egg, which is even further from the mushroom omelet that was ordered.  As a result, WSOU's complaint should be dismissed.

### 3.  The compliant fails to allege infringement under the doctrine of equivalents.

If WSOU meant to allege direct infringement under the doctrine of equivalents, its allegations remain implausible.  Claim 1 requires determining the "service indicator" value as a function of the network "parameter values."  It is not plausible to assert that the "service indicator" value is equivalent to the network "parameter values" used to determine it.  It would likewise be implausible to assert that determining a "service indicator" value from two or more network "parameter values" is the equivalent of determining a "service indicator" value from a single "parameter value."  In any event, WSOU's doctrine of equivalents claim consists of a single sentence of boilerplate (*see* Complaint, at ¶ 44) that fails to provide sufficient notice of the accused conduct.  As explained in *Macronix International Co. v. Spansion Inc.*, under *Twombly*, a plaintiff cannot "merely assert[] liability under that doctrine in a bare bones, conclusory form." 4 F. Supp. 3d 797, 804 (E.D. Va. 2014).

### B.  WSOU's Complaint Fails To Assert a Plausible Claim of Induced Infringement.

"[I]nducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961)).  Because the complaint fails to allege a plausible claim of direct infringement, this Court should dismiss WSOU's induced infringement claim.  *See* Complaint, at ¶ 46.

### C. WSOU's Complaint Fails To Assert a Plausible Claim of Contributory Infringement.

Finally, this Court should dismiss WSOU's contributory infringement claim. *See* Complaint, at ¶ 47. A complaint states a claim for contributory infringement only if it plausibly alleges that a defendant "sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Bill of Lading*, 681 F.3d at 1337.

It is not plausible to allege that Azure Monitor is purpose-made for infringement. Beyond a conclusory statement that Azure Monitor is "especially made or adapted for infringing" the patent, the most that WSOU's complaint alleges is that Azure Monitor "contain[s] functionality which is material to at least one claim." Complaint, at ¶ 47. This falls far short of the factual allegations necessary to state a claim for contributory infringement. Indeed, *most* of the uses identified in the documentation that WSOU cites to in its complaint do not implicate the claims at all. For example, as noted above, Azure Monitor can collect metrics or logs or provide a dashboard that displays information about a network. *See, supra*, at 4. These functions in no way perform what is claimed: forecasting when a network service might cross an acceptable threshold. It is not sufficient to allege that "if you use this device to perform the patented method, the device will infringe and has no noninfringing uses." *Bill of Lading*, 681 F.3d at 1338. To adequately plead contributory infringement, a complaint must plausibly allege that the accused product cannot be used for any other purpose than infringement. *See id.* Because WSOU's complaint fails in this regard, it should be dismissed.

### CONCLUSION

For the reasons above, Microsoft respectfully requests the Court dismiss WSOU's

11

complaint alleging infringement of the '160 patent.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: September 3, 2020 | */s/ Barry K. Shelton* |

Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Telephone: (512) 263-2165
Fax: (512) 263-2166
bshelton@sheltoncoburn.com

*Of Counsel*

Michael J. Bettinger
Irene Yang
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Fax: (415) 772-7400
mbettinger@sidley.com
irene.yang@sidley.com

Richard A. Cederoth
John W. McBride
SIDLEY AUSTIN LLP
1 South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
rcederoth@sidley.com
jwmcbride@sidley.com

*Attorneys for Defendant Microsoft Corporation*

## CERTIFICATE OF SERVICE

I certify that on September 3, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Barry K. Shelton*

Barry K. Shelton
