IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § § | CIVIL ACTION 6:20-CV-00454-ADA |
| Plaintiff, | § § | |
| v. | § § § | PATENT CASE |
| MICROSOFT CORPORATION, | § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**RESPONSE OPPOSING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

There is no merit to Microsoft Corporation's ("Microsoft's" or "Defendant's") allegation that WSOU Investments, LLC ("WSOU") relies on the same product features or "metrics" to satisfy different claim limitations. To the contrary, WSOU clearly identifies distinct features that satisfy each of the claim limitations challenged by Defendant.[1] There is likewise no merit to Defendant's allegation that WSOU fails to identify a "service indicator" that is a function of *multiple* parameters (as Defendant puts it, an omelet made of eggs and something else). Rather, WSOU clearly alleges the existence of service indicators that are a function of multiple parameters[2] (as parameters is implicitly construed[3] by Defendant). Therefore, WSOU pleads factual content that allows the Court to draw the reasonable inference that Defendant is liable for direct infringement, and Defendant's motion to dismiss WSOU's direct infringement claim should be

---

[1] As one example, WSOU clearly identifies SuccessE2ELatency as a service indicator that is a *function* of Latency, a network parameter. *See* Complaint ¶ 33-37.

[2] SuccessE2ELatency, for example, is a composite "metric" that is a function of multiple parameters (as parameters is implicitly construed by Defendant). *See* Complaint ¶ 37 (including chart with a description of SuccessE2ELatency that demonstrates it is a function of multiple parameters).

[3] WSOU's argument concerning multiple parameters also fails because it is based on an implicit claim construction argument that is not the proper basis for a Rule 12(b)(6) motion.

denied.

Defendant's challenges to infringement under the doctrine of equivalents, induced infringement, and contributory infringement are based on the same arguments as its challenge to direct infringement and fail for the same reasons.

## ARGUMENT

### A. Legal Standard

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *Altman*, 2012 WL 4033336, at *1. In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v, Gibson*, 355 U.S. 41, 45–46 (1957)); *see also* ESW HOLDINGS, INC., Plaintiff, v. ROKU, INC., Defendant., 6:19-CV-00044-ADA, 2019 WL 10303653, at *1–2 (W.D. Tex. May 13, 2019).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim has "facial plausibility" and must not be dismissed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal under Rule 12(b)(6) is inappropriate where fact discover could affect the court's analysis. *See Syte - Visual Conception Ltd.*, 2020 WL 278481 at *6 (denying Rule 12(b)(6) motion

because fact discovery could affect the court's § 101 analysis).

### B. WSOU alleges a plausible claim for direct infringement.

#### 1. WSOU does not rely on identical features to satisfy different claim limitations.

WSOU does not rely on identical features or "metrics" to satisfy different claim limitations. To the contrary, WSOU's Complaint clearly identifies distinct features that satisfy each of the limitations challenged by Defendant.

<u>Network Parameters</u>: As examples of features that correspond to the "two or more parameters of a network" limitation, WSOU's complaint identifies "loss, latency, response time, [and] bandwidth utilization." Complaint ¶¶ 30-33. Defendant does not seriously dispute that these satisfy the "parameters of a network" limitation.

<u>Network Parameter Values</u>: WSOU's complaint explains that the "parameters of a network" are measured and or calculated at regular intervals. *Id.* ¶ 33. (citing Azure Network Monitor, Page 1833). Thus, the complaint identifies examples that satisfy the "measuring and/or calculating at two or more times values of the network parameters" limitation (or the "parameter values").

<u>Service Indicator Values</u>: Finally, WSOU's complaint identifies examples of features that satisfy the "service indicator as a function of said measured and/or calculated parameter values" limitation by pointing to the "Key Performance indicator (KPIs) (i.e. service indicator)," which monitors "metrics like SuccessE2ELatency" (a "*<u>function</u>* of Latency (i.e. network parameter))" and "Average Bandwidth" ("a *<u>function</u>* of Bandwidth (i.e. network parameter)). *Id.* ¶¶ 34-37 (emphasis added).

#### 2. The Court should reject Defendant's attempts to conflate distinct features identified by WSOU.

Defendant attempts to conflate distinct features identified by WSOU by ignoring allegations in WSOU's complaint and by insisting anything labeled as a "metric" by Defendant is the same. For example, Defendant falsely claims WSOU "alleges that 'Bandwidth' is a network 'parameter value' *and* a 'service indicator' value even though the claims require determining one

'as a function' of the other." *See, e.g.*, Dkt. 20 at 7.  Defendant alleges this even though WSOU clearly identifies "Average Bandwidth" (a service indicator) as a function of "Bandwidth" (a parameter).[4]  Average Bandwidth and Bandwidth are not the same.

Similarly, Defendant conflates every product feature that might be labeled as a "metric," insisting that "[f]or WSOU's complaint to plausibly allege infringement, these metrics must somehow be both the claimed network 'parameter values' and the 'service indicator' values determined as a function of them."  Dkt. 20 at 9.  "Metrics" is not a term used in the patent, much less the claim language.  It is a term Defendant uses to describe features of the accused product.  The accused product contains *numerous* "metrics."  Dkt. 20 at 4 (claiming "Azure Monitor can collect hundreds of metrics").  For infringement, it is irrelevant whether features that satisfy the "parameters" limitation and features that satisfy the "service indicator" limitation fall under the "metrics" umbrella, as "metrics" is defined within Defendant's product.  It is irrelevant, for example, whether "Latency" and "SuccessE2ELatency" are both "metrics."  This does not change the fact that, under the claim language, "Latency" satisfies the "parameters" limitation and "SuccessE2ELatency"—a function of Latency—satisfies the "service indicator" limitation (as explained in WSOU's Complaint).  The Court should reject Defendant's attempt to conflate these distinct features identified by WSOU.

### 3. WSOU adequately alleges a "service indicator" that is a function of multiple "parameters."

There is no merit to Defendant's allegation that WSOU fails to identify a "service indicator" that is a function of multiple "parameters" (as Defendant puts it, an omelet made of eggs and something else).  As one example included in the complaint, SuccessE2ELatency is a composite "metric" that is a function of multiple parameters (as parameters is implicitly construed by Defendant).  Complaint ¶ 37.  It measures the "end-to-end latency of successful requests made

---

[4] Defendant justifies this argument by citing paragraphs 38-39 of the complaint, which identify "metrics" like "Bandwidth and Latency."  But Defendant simply ignores earlier paragraphs of the Complaint explaining how ***functions*** of Latency and Bandwidth (such as SuccessE2ELatency and Average Bandwidth) satisfy the service indicator values limitation.

to a storage service or the specified API operation, in milliseconds." *Id.* (see "Description" of "SuccessE2ELatency" in table). This value "includes the required processing time within Azure Storage to read the request, send the response, and receive acknowledgment of the response." *Id.* Thus, it includes multiple parameters, including request time and response time. As a counter-example, the "SuccessServerLatency" metric is a single-dimensional value that is a measure only of the "latency used by Azure Storage to process a successful request, in milliseconds" but "does not include the network latency specified in SuccessE2ELatency." *Id.* (see "Description" of SuccessServerLatency" in same chart).

As explained in WSOU's complaint, according to Defendant's own documentation its metrics can have "one *or more* defining labels" and can be "aggregated using a *variety of algorithms*" and be "compared to other metrics." Complaint ¶ 36 (citing Azure Network Monitor, Page 197) (emphasis added). This factual pleading is enough, alone, to allow the Court to draw the reasonable inference that metrics include "service indicator values" that are a function of multiple "parameters." Combined with the example of SuccessE2ELatency as a metric that is a function of multiple parameters, there is no need to infer.

To remove any doubt, WSOU's public documentation describing the accused product acknowledges the existence of multi-dimensional metrics, explaining that "[s]ome metrics may have multiple dimensions as described in Multi-dimensional metrics. Custom metrics can have up to 10 dimensions."[5] Defendant explains that a "non-dimensional metric can only answer a basic question, like 'what was my network throughput at a given time?'" *Id.* Defendant then provides an example of a multi-dimensional metric ("Network Throughout + two dimensions ('IP' and 'Direction')," explaining that this metric can answer questions such as "what was the network throughput for each IP address?", and "how much data was sent versus received?" *Id.* Defendant goes on to explain: "Multi-dimensional metrics carry additional analytical and diagnostic value compared to non-dimensional metrics." *Id.* In Defendant's own example, Dimension "IP" and

---

[5] *See* https://docs.microsoft.com/en-us/azure/azure-monitor/platform/data-platform-metrics.

Dimension "Direction" are multiple parameters even under Defendant's implied construction of "parameters."

Not only can this Court reasonably infer Defendant's metrics include "service indicator values" that are a function of multiple "parameters," Defendant cannot reasonably deny it.

### 4. Defendant's "multiple parameters" argument is a pre-mature claim construction argument.

Defendant's "two or more parameters" argument should also be rejected as a pre-mature claim construction argument. It is generally "inappropriate to resolve a claim construction dispute on a motion to dismiss for failure to state a claim of infringement[.]" *Regents of Univ. of Michigan v. Leica Microsystems Inc.*, 19-CV-07470-LHK, 2020 WL 2084891, at *6 (N.D. Cal. Apr. 30, 2020); *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, W-19-CV-00257-ADA, 2020 WL 278481, at *5 (W.D. Tex. Jan. 10, 2020) (finding Rule 12(b)(6) motion to dismiss under § 101 should be deferred until after claim construction). Here, Defendant relies on implicit claim construction arguments by, for example, assuming Bandwidth (consisting of data over time) is a single parameter regardless of the number of times it is measured. Defendant also relies on an assumed construction of "said measured and/or calculated parameter values."

### 5. The Court should disregard Defendant's ancillary arguments.

In footnotes, Defendant's motion inserts several ancillary arguments that Defendant acknowledges are not proper in a motion to dismiss. Dkt. 20 n. 3, 4, 7. Footnote 3, for example, claims near time alerts "are not based on forecasts or predictions." *Id.* at 4, n. 3. Defendant admits this assertion is "not central to the instant motion." *Id.* Indeed, it is not proper for a motion to dismiss because relies on a factual assertion outside the pleadings *and* a tacit (but undefended) interpretation of claim scope. It should be disregarded.

Footnote 4 should likewise be disregarded as an improper argument concerning claim construction. Dkt. 20 at 7 n. 4 (citing prosecution history to advance a potential claim construction issue that Defendant admits is not the subject of its motion).

Footnote 7 of Defendant's motion disputes a factual allegation and should be disregarded

under the basic Rule 12(b)(6) standard, which requires a Court to accept as true well pled facts. Further, Defendant's factual assertion is belied by its own documentation.

### C. WSOU alleges a plausible claim for infringement under the doctrine of equivalents.

Defendant's challenge to the doctrine of equivalents relies on the same mischaracterizations of WSOU's allegations as its challenge to direct infringement.  It also claims WSOU relies on boilerplate allegations.  There is no merit to this claim.  WSOU's complaint recognizes that service indicator and parameter values are recited as claim elements and provides sufficient notice concerning accused features for each element (with specific examples), under theories of direct infringement or, alternatively, under the doctrine of equivalents.

### D. WSOU alleges a plausible claim for induced infringement.

Defendant's challenge to induced infringement is based solely on Defendant's allegation that WSOU fails to allege a plausible claim for direct infringement.  Because WSOU *has* alleged a plausible claim for direct infringement, Defendant's challenge to induced infringement should be denied.

### E. WSOU alleges a plausible claim for contributory infringement.

Defendant's motion to dismiss WSOU's contributory infringement claim should be denied because it is based on tacit (yet undefended) interpretations of claim scope (including the same tacit interpretation advanced in footnote 3) and a factual assertion that is beyond the pleadings.

## CONCLUSION

WSOU pleads factual content that allows this Court to draw the reasonable inference that Defendant is liable for the misconduct alleged.  Defendant has not shown that WSOU would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint, and its motion should be denied.

Dated: September 17, 2020						Respectfully submitted,

						*/s/ Travis Richins*
						James L. Etheridge
						Texas State Bar No. 24059147
						Ryan S. Loveless
						Texas State Bar No. 24036997
						Travis L. Richins
						Texas State Bar No. 24061296
						Brett A. Mangrum
						Texas State Bar No. 24065671
						Jeffrey Huang
						ETHERIDGE LAW GROUP, PLLC
						2600 E. Southlake Blvd., Suite 120 / 324
						Southlake, Texas 76092
						Telephone: (817) 470-7249
						Facsimile: (817) 887-5950
						Jim@EtheridgeLaw.com
						Ryan@EtheridgeLaw.com
						Travis@EtheridgeLaw.com
						Brett@EtheridgeLaw.com
						JeffH@EtheridgeLaw.com

						**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via email in accordance with the Federal Rules of Civil Procedure on September 17, 2020.

						*/s/ Ryan S. Loveless*
						Ryan S. Loveless