IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00454-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00455-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00456-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00457-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00458-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00459-ADA** |
| **v.** | § | **CIVIL ACTION 6:20-cv-00460-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00461-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00462-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00463-ADA** |
| **MICROSOFT CORPORATION,** | § | **CIVIL ACTION 6:20-cv-00464-ADA** |
| *Defendant.* | § | **CIVIL ACTION 6:20-cv-00465-ADA** |

**DEFENDANT MICROSOFT CORPORATION'S OPPOSED MOTION
TO TRANSFER VENUE TO AUSTIN DIVISION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................................ 1

II.    BACKGROUND ............................................................................................................ 2

III.  ARGUMENT AND AUTHORITIES ............................................................................ 6

   A. The Complaint Demonstrates that Plaintiff Could Have Filed This Case in the Austin Division.................................................................................................................... 7

   B. The Austin Division Is Clearly More Convenient Than the Waco Division, Which Has No Significant Connection to the Case or the Parties.................................................... 7

      1.   Factors Favoring Transfer ............................................................................... 8

      2.   All Other Factors Are Neutral....................................................................... 14

IV.   CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Datascape, Ltd. v. Dell Techs. Inc.*,
No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. Jun 7, 2019) .................7, 8, 9, 13

*Freshub, Inc. v. Amazon.com Inc.*,
No. W-19-CV-00388-ADA (W.D. Tex. Sept. 9, 2019), ECF No. 29 ......................................6

*In re Google Inc.*,
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ....................................................14

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*,
No 6:19-CV-00355-ADA (W.D. Tex. Mar. 30, 2020), ECF No. 65 .......................................6

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)..............................................................................................14

*McCloud v. McLinton Energy Grp., L.L.C.*,
No. 5:14-cv-620-XR, 2014 WL 6388417 (W.D. Tex. Nov. 14, 2014)....................................9

*Mimedx Grp., Inc. v. Tex. Human Biologics, Ltd.*,
No. 1:14–CV–464–LY, 2014 WL 12479284 ............................................................... *passim*

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)................................................................................................8

*Perry v. Autocraft Invs., Inc.*,
No. 4:13-CV-01959, 2013 WL 3338580 (S.D. Tex. July 2, 2013) ..........................................8

*STC.UNM v. Apple*,
No. 6:19-cv-00428-ADA, 2020 WL 4559706 (W.D. Tex. Apr. 1, 2020) ..............................13

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)..............................................................................................14

*VLSI Tech. LLC v. Intel Corp.*,
No. 6:19-CV-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019)...............................6

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ...............................................................................................6, 7

*Voxer, Inc. v. Facebook, Inc.*,
  No. 6:20-CV-00011-ADA, 2020 WL 3416012 (W.D. Tex. June 22, 2020) ...........................6

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010)...............................................................................................14

**Statutes**

28 U.S.C. § 1404......................................................................................................................1

28 U.S.C. § 1404(a) ................................................................................................6, 13, 14, 15

Defendant Microsoft Corporation ("Microsoft") seeks an intra-district transfer to the Austin Division under 28 U.S.C. §1404 because none of these twelve actions has any relevant connections to the Waco Division and Austin is the clearly more convenient forum.

## I.      INTRODUCTION

In its Complaint, Plaintiff WSOU Investments, LLC ("WSOU" or "Plaintiff") seeks to root venue in the Waco Division of the Western District of Texas rather than anywhere that Microsoft, its expected witnesses, or related sources of proof reside. Microsoft is a Washington corporation that is headquartered in Redmond, Washington, and while it has some operations in Austin, it has ***no*** facilities or operations in the Waco Division. Indeed, Plaintiff's venue allegations—none of which are specific to the accused products—focus on Austin. Plaintiff has not identified any potential Microsoft locations, witnesses, documents, or evidence in the Waco Division. Instead, the only nominal connection to Waco is the listed "principal place of business," for Plaintiff's "d.b.a." alias, but the individuals publicly associated with the Plaintiff are all located outside of Texas and the listed address appears to have been set up immediately prior to filing over a hundred lawsuits in Waco. Though Microsoft could properly seek to transfer this action to the Western District of Washington—the epicenter of the relevant evidence, its accused products, and its corporate headquarters—for this unique set of actions, it simply seeks to be venued in Austin, which is consistent with the allegations in the Complaint, honors Plaintiff's choice of judge and the Western District of Texas, and yet provides a clearly more convenient forum than Waco without disrupting the case schedule.

Counsel for the parties have conferred in a good faith attempt to resolve the matter but were unable to reach agreement.

## II.      BACKGROUND

As Plaintiff acknowledges, Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Complaint, ¶ 3.[1] Tara Eaves, a Human Resources Data Analyst Group Manager at Microsoft, confirmed that Microsoft does not maintain a place of business in the Waco Division of the Western District of Texas. *See* Decl. of Tara Eaves in Support of Microsoft's Mot. (hereinafter "Eaves Decl.") ¶ 6; *see also* Decl. of Sandy Park in Support of Microsoft's Mot. (hereinafter "Park Decl."), ¶ 8. Instead, based on Microsoft's understanding of Plaintiff's infringement allegations, Microsoft's relevant engineering, sales, and finance documents are in Washington state as are its relevant potential witnesses. Eaves Decl., ¶¶ 8–14. In any event, none of this potentially relevant evidence is in Waco. *Id.*

There are no facts that show Microsoft has a presence in the counties that make up the Waco Division, and Plaintiff has not alleged any. Instead, Plaintiff's allegations relate to Austin, or to Texas overall. Plaintiff alleges that Microsoft has a registered agent ***in Austin***, not Waco. Complaint, ¶ 3. Plaintiff alleges that Microsoft has a Corporate Sales Office ***in Austin***, and a Retail Store[2] ***in Austin***, not Waco. Complaint, ¶¶ 14–15. Plaintiff alleges that this District has previously been deemed a proper venue for various patent cases against Microsoft, but all of those cases were ***transferred to Austin***, and did not proceed in Waco. Complaint, ¶ 10. None of Plaintiff's assertions relate to or allege a presence within the Waco Division. *See* Complaint, ¶¶ 3–19. Plaintiff's only other allegations with respect to physical locations relate to San Antonio. *See* Complaint, ¶¶ 16–17.

---

[1] Unless otherwise indicated, citations to "Complaint" herein refer to the Complaint in each of the twelve actions. Paragraphs 1-19 of the twelve Complaints are identical.

[2] Microsoft has closed its retail operations. *See* https://news.microsoft.com/2020/06/26/microsoft-store-announces-new-approach-to-retail/.

Although the locus of Microsoft's activities as a whole, and specifically as related to the accused products, are in Washington, Microsoft has had an office location at 10900 Stonelake Boulevard in Austin since 2009. Park Decl., ¶¶ 4–5. The Austin office covers approximately 20,000 square feet and one floor of a multi-tenant building and operates primarily as a regional sales office. Park Decl., ¶ 4. The Austin office is a secured Microsoft site available to up to 50 visiting Microsoft employees at a time and offers the benefits and conveniences of being in a secure Microsoft environment. Park Decl., ¶¶ 5-7. These include the ability to reserve private work space, use conference rooms, access Microsoft's corporate high speed internet and internal Corporate Network, and take advantage of full IT, facilities, reception, and other support staff. Park Decl., ¶¶ 6-7. Microsoft employees from Washington State and elsewhere may be granted access to the Austin office using normal Microsoft security procedures. Park Decl., ¶ 5.

Plaintiff's purported connections to Waco appear superficial. WSOU Investments LLC is a Delaware corporation that was formed in July 2017 to purchase intellectual property and registered with the Texas Secretary of State on January 7, 2020 as a Foreign LLC with a business registration at 605 Austin Ave Ste 6, Waco, TX 76701. Yang Decl., Exs. 1–4. WSOU's registered agent for service is *in Austin*. *Id.* The Assumed Name Certificate for WSOU's d.b.a., Brazos Development and Licensing, was filed with the Texas Secretary of State on January 21, 2020 and lists 211 E. 7th Street, Suite 620 *in Austin* as its address. Yang Decl., Ex. 3 at 7, Ex. 4 at 2. Since registering a business address in Waco in January of 2020, WSOU has filed 125 lawsuits in the Western District of Texas, beginning in March 2020. Yang Decl., Ex. 5. Plaintiff's Complaint does not allege any actual business activity conducted by WSOU in Waco. *See generally*, Complaint.

Plaintiff's website lists only four individuals: Craig Etchegoyen, Stuart A. Shanus, Aaron Garvey, and Matt Hogan. Yang Decl., Ex. 6. Mr. Etchegoyen, an alumnus of patent licensing entity Uniloc, appears to be located in Kailua-Kona, Hawaii. Yang Decl., Ex. 7. Mr. Shanus, who is the

only individual identified on Plaintiff's corporate registrations in Texas, appears to reside in Los Angeles. Yang Decl., Ex. 8. Mr. Garvey appears to be located in New York. Yang Decl., Ex. 9. Mr. Hogan's LinkedIn page identifies him as also residing in New York. Yang Decl., Ex. 10. Accordingly, the individuals associated with WSOU do not provide any support for legitimate business activity in this District, let alone Waco.

Plaintiff's Complaints in these 12 actions assert patents with a cumulative total of 31 different inventors, none of whom reside in Waco and 8 of whom appear to reside outside of the United States. In particular:

- In Case No. 20-cv-00454, Plaintiff asserts U.S. Patent No. 7,366,160 ("the '160 Patent"). The three listed inventors of the '160 patent appear to reside in France. Case No. 20-cv-00454 Complaint, Ex. A at 1.

- In Case No. 20-cv-00455, Plaintiff asserts U.S. Patent No. 9,814,988 ("the '988 patent"). The four listed inventors of the '988 patent appear to reside in the United Kingdom. Case No. 20-cv-00455 Complaint, Ex. A at 1.

- In Case No. 20-cv-00456, Plaintiff asserts U.S. Patent No. 7,676,550 ("the '550 Patent"). The listed inventor of the '550 patent appears to reside in the San Francisco Bay Area. Yang Decl. Ex. 15, pp. 19-31

- In Case No. 20-cv-00457, Plaintiff asserts U.S. Patent No. 8,965,978 ("the '978 Patent"). The five listed inventors of the '978 patent appear to reside in New York and New Jersey. Case No. 20-cv-00457 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 49-58.

- In Case No. 20-cv-00458, Plaintiff asserts U.S. Patent No. 7,388,868 ("the '868 Patent"). The five listed inventors of the '868 patent appear to reside in Plano, Texas and Frisco, Texas. Case No. 20-cv-00458 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 45-48.

- In Case No. 20-cv-00459, Plaintiff asserts U.S. Patent No. 7,750,286 ("the '286 Patent"). The listed inventor of the '286 patent appears to reside in New Jersey. Case No. 20-cv-00459 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 13-18.

- In Case No. 20-cv-00460, Plaintiff asserts U.S. Patent No. 8,625,758 ("the '758 Patent"). The two listed inventors of the '758 patent appear to reside in China and Illinois. Case No. 20-cv-00460 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 37-44.

- In Case No. 20-cv-00461, Plaintiff asserts U.S. Patent No. 7,106,702 ("the '702 Patent"). The two listed inventors of the '702 patent appear to reside in Illinois. Case No. 20-cv-00461 Complaint, Ex. A at 1.

- In Case No. 20-cv-00462, Plaintiff asserts U.S. Patent No. 7,106,727 ("the '727 Patent"). The two listed inventors of the '727 patent appear to reside in Illinois. Case No. 20-cv-00462 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 32-36.

- In Case No. 20-cv-00463, Plaintiff asserts U.S. Patent No. 8,226,241 ("the '241 Patent"). The two listed inventors of the '241 patent appear to reside in New Jersey. Case No. 20-cv-00463 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 6-18.

- In Case No. 20-cv-00464, Plaintiff asserts U.S. Patent No. 7,706,519 ("the '519 Patent"). The two listed inventors of the '519 patent appear to reside in Lewisville, Texas and Fairview, Texas. Case No. 20-cv-00464 Complaint, Ex. A at 1.

- In Case No. 20-cv-00465, Plaintiff asserts U.S. Patent No. 8,274,902 ("the '902 Patent"). The two listed inventors of the '902 patent appear to reside in New Jersey. Case No. 20-cv-00465 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 2-5.

Microsoft is aware of no relevant third-party witnesses in Texas, and certainly not in Waco, based on its investigation to date of the Complaint and allegations therein.

## III.    ARGUMENT AND AUTHORITIES

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). As the Fifth Circuit confirmed in *In re Radmax, Ltd.*, "[t]he § 1404(a) factors apply as much to transfers ***between*** divisions of the same district as to transfers from one district to another." 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added).[3] In *Radmax*, the Fifth Circuit issued a writ of mandamus and reversed a denial of intra-district transfer because "the case ha[d] no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . [were] in the transferee forum." *Id.* at 290. This District has repeatedly recognized and applied the same principle, including in patent cases. This Court has transferred multiple patent matters from Waco to Austin in the past year. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *5 (W.D. Tex. Oct. 7, 2019); *Voxer, Inc. v. Facebook, Inc.*, No. 6:20-CV-00011-ADA, 2020 WL 3416012, at *7 (W.D. Tex. June 22, 2020); *Freshub, Inc. v. Amazon.com Inc.*, No. W-19-CV-00388-ADA (W.D. Tex. Sept. 9, 2019), ECF No. 29; *Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No 6:19-CV-00355-ADA (W.D. Tex. Mar. 30, 2020), ECF No. 65.

In determining whether transfer is appropriate, the Court must first consider "whether a civil action 'might have been brought' in the destination venue." *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (quoting § 1404(a)). If the answer to this threshold question is *yes*, the Court must then weigh a number of factors to determine the relative convenience of each venue:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative

---

[3] All emphasis added unless otherwise noted.

difficulties flowing from court congestion; (6) the local interest in having
localized interests decided at home; (7) the familiarity of the forum with the
law that will govern the case; and (8) the avoidance of unnecessary
problems of conflict of laws [or in] the application of foreign law.

*Radmax*, 720 F.3d at 288 (quotation marks omitted) (citing *Volkswagen*, 545 F.3d at 315). Where

the analysis of the relevant factors shows the transferee forum to be "clearly more convenient"

than the plaintiff's original choice, the court must order transfer. *Id.*

### A.   The Complaint Demonstrates that Plaintiff Could Have Filed This Case in the Austin Division

Plaintiff's complaint confirms that this case could have been filed in Austin. Attempting to

establish ties to the Western District of Texas writ large, Plaintiff alleges many facts in its

Complaint that refer to Austin, including that Microsoft has physical office space in Austin. *See*

Complaint, ¶¶ 3, 14–15. There can be no dispute that Plaintiff's allegations root this case in Austin,

such that on Plaintiff's view, it "might have been brought" in the Austin Division, which is still

within the District that Plaintiff chose. *See Mimedx Grp., Inc. v. Tex. Human Biologics, Ltd.*, No.

1:14–CV–464–LY, 2014 WL 12479284, at *1 (citing *Volkswagen*, 545 F.3d at 312).

### B.   The Austin Division Is Clearly More Convenient Than the Waco Division, Which Has No Significant Connection to the Case or the Parties

Analyzing the Fifth Circuit's enumerated factors (adopted for intra-district transfers in

*Radmax*) demonstrates that litigating this case in the Austin Division would be clearly more

convenient than litigating in the Waco Division: four factors favor transfer; four factors are neutral;

and ***no*** factors support litigating in the Waco Division. Thus, transfer is warranted. *See Datascape,*

*Ltd. v. Dell Techs. Inc.,* No. 6:19-CV-00129-ADA, 2019 WL 4254069 at *1-2 (W.D. Tex. Jun 7,

2019) ("Most—if not all—of the relevant connections in this case are to Austin rather than to

Waco. The Court agrees with Defendants that, overall, the relevant convenience weighs heavily in

favor of transfer."); *see also Radmax*, 720 F.3d at 290 (confirming that it was an "extraordinary

error" to decline transfer where three factors supported transfer, five were neutral, and "not a single

7

relevant factor favors the plaintiffs' chosen venue" (brackets omitted) (quoting *Volkswagen*, 545 F.3d at 318)); *Mimedx*, 2014 WL 12479284, at *3 (ordering transfer where four factors favored transfer, four were neutral, and none favored plaintiff's choice of venue).

### 1. Factors Favoring Transfer

No party has any significant, authentic connection to the Waco Division. To the extent there are any relevant documents and witnesses in this District—and to be clear, the vast majority are in Washington—they will be in the Austin Division. Accordingly, the relative ease of access to sources of proof, the cost of attendance for willing witnesses, other practical issues, and Austin's local interest in deciding this case all strongly favor transfer.

### a. Relative Ease of Access to Sources of Proof Favors Transfer, as No Relevant Evidence Is Identified to be in Waco

The first factor considers the location of relevant evidence. As the Federal Circuit has noted, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (applying Fifth Circuit law). Moreover, as this Court explained in *Datascape*, "the question is *relative* ease of access, not *absolute* ease of access." *Datascape*, 2019 WL 4254069 at *2 (emphasis in original); *see also Mimedx*, 2014 WL 12479284, at *2; *Perry v. Autocraft Invs., Inc.*, No. 4:13-CV-01959, 2013 WL 3338580, at *2 (S.D. Tex. July 2, 2013) ("[A]lthough the inconvenience of obtaining sources of proof in the Galveston Division may be slight, Houston's relatively easier access to evidence favors transfer.").

Microsoft has identified no relevant documents for this matter in the Waco Division. There are no data centers in the Waco Division. Eaves Decl., ¶ 8. Instead, any relevant Microsoft evidence is located in Redmond, Washington. Eaves Decl., ¶ 8; *see also* Park Decl., ¶ 7. That Microsoft's documents are primarily outside Texas is immaterial to this motion. The critical point

here is that **none of the relevant evidence is in the Waco Division**. *See McCloud v. McLinton Energy Grp., L.L.C.*, No. 5:14-cv-620-XR, 2014 WL 6388417, at *3 (W.D. Tex. Nov. 14, 2014) ("Although Plaintiffs state that not 'all' the evidence is in Midland, certainly the bulk of it is there, and Plaintiffs point to **no** evidence in San Antonio or within the San Antonio Division.").

Accordingly, just as in *Datascape*, "access to sources of proof is *relatively* easier in Austin than it is in Waco. This factor thus supports transfer." *Datascape*, 2019 WL 4254069 at *2 (emphasis in original).

> **b.** **Cost of Attendance for Willing Witnesses to Travel to and Stay in Austin Is Significantly More Convenient than Waco**

The third factor "appropriately considers the cost of attendance of **all** willing witnesses," including both non-party and party witnesses. *See Mimedx*, 2014 WL 12479284, at *2. Based on Plaintiff's allegations and Microsoft's investigation thereof, Microsoft understands that the overwhelming majority of potentially relevant Microsoft witnesses are located in Redmond, Washington, given that all strategic decision making regarding the accused products occurs in Washington. Eaves Decl., ¶¶ 9–13.

Microsoft's connection to Austin is limited, but there is no question that there can be **absolutely no** potentially relevant Microsoft witnesses in Waco:

- As to Case Nos. 20-cv-00456, 20-cv-00458, 20-cv-00460, 20-cv-00462, and 20-cv-00464, the relevant organization at Microsoft is Skype Infrastructure. There are no personnel that are part of the Skype Infrastructure organization in Austin, and there is one employee in the Marketing group for Skype in Dallas. *See* Eaves Decl., ¶ 9. There are no Skype or Teams personnel in the Waco Division. *Id.*

- As to Case No. 20-cv-00461, the relevant organization at Microsoft is COSinE. There are three personnel located in Austin that are part of the COSinE organization, and no

employees in the Marketing group for Windows Server in the state of Texas. *See* Eaves Decl., ¶ 10. There are no Windows Server personnel in the Waco Division. *Id.*

- As to Case Nos. 20-cv-00459 and 20-cv-00463, the relevant organization at Microsoft is Mixed Reality. There are two personnel located in Austin that are part of the Mixed Reality organization, and no employees in the Marketing group for HoloLens in the state of Texas. *See* Eaves Decl., ¶ 11. There are no HoloLens personnel in the Waco Division. *Id.*

- As to Case Nos. 20-cv-00454 and 20-cv-00465, the relevant organization at Microsoft is Azure Core. There are 20 personnel located in Austin that are part of the Azure Core organization, while 7,801 are located in Redmond. *See* Eaves Decl., ¶ 12. There are no marketing employees for Azure in the state of Texas. *Id.* There are no Azure personnel in the Waco Division. *Id.*

- As to Case Nos. 20-cv-00455 and 20-cv-00457, there are no personnel that are part of Xbox in Austin, and no employees in the Marketing group for Xbox in the state of Texas. *See* Eaves Decl., ¶ 13. There are no Xbox personnel in the Waco Division. *Id.*

For witnesses traveling from Redmond, Austin is much more convenient. They can work out of Microsoft's Austin facility and take advantage of private work space, conference rooms, IT services such as the corporate internet connection and private intranet. *See* Park Decl., ¶¶ 6-7. Visiting Microsoft employees to the Austin office are also fully supported by staff in the Austin office, a convenience unavailable to them in Waco. Park Decl., ¶ 7. For witnesses traveling from Redmond, travel to Waco instead of Austin represents additional travel burden, inconvenience, length of stay, and costs because there are no direct flights from Seattle to Waco, while there are many direct flights from Seattle to Austin, daily. *See* Yang Decl., Exs. 11–12.

For Plaintiff's own witnesses coming from Los Angeles and New York, travel from those airports to Austin is similarly more convenient because there are numerous direct flights per day,

while there are no direct flights to Waco. *Id.* For Plaintiff's witness coming from Kailua-Kona, Hawaii, there are flights with one stop to Austin, while all flights to Waco require at least two stops. *See* Yang Decl., Exs. 13–14.

The inventors are scattered throughout the country and the world, but none appear to be located within 100 miles of the Waco Division or the Austin Division. In particular:

- In Case No. 20-cv-00454, involving the '160 patent, the inventors are located in France. Case No. 20-cv-00454 Complaint, Ex. A at 1. There are direct flights from Paris to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00455, involving the '988 patent, the inventors are located in the United Kingdom. Case No. 20-cv-00455 Complaint, Ex. A at 1. There are direct flights from London to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00456, involving the '550 patent, the inventor is located in the San Francisco Bay Area. Yang Decl. Ex. 15, pp. 19-31. There are direct flights from San Francisco, Oakland, and San Jose to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00457, involving the '978 patent, the inventors are located in New York and New Jersey. Case No. 20-cv-00457 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 49-58. There are direct flights from New York (JFK) and New York/Newark to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00458, involving the '868 patent, the inventors are located in Heath, Frisco, and Plano, Texas. Case No. 20-cv-00458 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 45-48. These locations are each over 100 miles away from both Waco and Austin. *See* Yang Decl., Exs. 16–17.

- In Case No. 20-cv-00459, the inventors are located in New Jersey. Case No. 20-cv-00459 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 13-18. There are direct flights from New York (JFK) and New York/Newark to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00460, the inventors are located in China and Illinois. Case No. 20-cv-00460 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 37-44. There are direct flights from Chicago (ORD) to Austin, but not to Waco. There are no direct flights from Shanghai to either Waco or Austin. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00461, the inventors are located in Illinois. Case No. 20-cv-00461 Complaint, Ex. A at 1. There are direct flights from Chicago (ORD) to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00462, the inventors are located in Illinois. Case No. 20-cv-00462 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 32-36. There are direct flights from Chicago (ORD) to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00463, the inventors are located in New Jersey. Case No. 20-cv-00463 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 6-18. There are direct flights from New York (JFK) and New York/Newark to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

- In Case No. 20-cv-00464, the inventors are located in  Lewisville, Texas and Fairview, Texas. Case No. 20-cv-00464 Complaint, Ex. A at 1. These locations are each over 100 miles away from both Waco and Austin. *See* Yang Decl., Exs. 16–17.

- In Case No. 20-cv-00465, the inventors are located in New Jersey. Case No. 20-cv-00465 Complaint, Ex. A at 1; Yang Decl. Ex. 15, pp. 2-5. There are direct flights from New York (JFK) and New York/Newark to Austin, but not to Waco. *See* Yang Decl., Exs. 11–12.

This factor favors transfer, as there appear to be no expected witnesses located in or near Waco, while travel to Austin rather than Waco will be more convenient for the overwhelming majority of witnesses. *See Datascape*, 2019 WL 4254069 at *2.

### c.   All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive Favor Transfer to Austin

The fourth factor considers practical problems, speed, and expense. This case is still in its earliest stages. The initial case management conference was scheduled for only two weeks ago, and invalidity contentions are not due for another five weeks. The *Markman* hearing is not for another five months. Moreover, even if the Court grants Microsoft's motion, prior cases suggest that it could retain jurisdiction and retain the case schedule. *See Datascape*, 2019 WL 4254069 at *3; *see also STC.UNM v. Apple*, No. 6:19-cv-00428-ADA, 2020 WL 4559706, at *9 (W.D. Tex. Apr. 1, 2020). Thus, transferring the case to the Austin Division would not result in any meaningful delay that would counsel against doing so. *See Radmax*, 720 F.3d at 289 ("[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer."); *Mimedx*, 2014 WL 12479284, at *2.

Furthermore, the Federal Circuit (applying Fifth Circuit law) has expressly held that it is legal error to allow judicial economy considerations to "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (nonprecedential) ("[I]t is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits . . . . To hold otherwise, we would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district.").

Accordingly, this factor also strongly weighs in favor of transfer.

### d.    If There Is Any Localized Interest, Austin Has a Much Greater Interest in Having This Case Decided at Home than Waco

Finally, Plaintiff's allegations regarding Microsoft's presence in the Austin Division strongly suggest that if there is a localized interest, Austin has more of an interest in deciding this case than Waco—which has none. Microsoft employs 188 people in its Austin office. Eaves Decl., ¶ 7. WSOU, by contrast, does not create jobs in Waco; the patent-in-suit was not developed by WSOU employees; the named inventors have no known connection to Waco; and not even the principals of WSOU are located in Waco, or in Texas for that matter. Thus, the outcome of this case will affect local Austin interests more so than local Waco interests. *See Mimedx*, 2014 WL 12479284, at *3 (confirming in patent case that "Defendants and their employees are local to the San Antonio area. The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests."); *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, [the local interest] this factor should be weighed in that venue's favor."). Thus, this factor weighs in favor of transfer. *See Radmax*, 720 F.3d at 289 (rejecting argument that "plaintiffs' choice of venue" weakened the local interest factor favoring transfer) (internal quotation marks and citation omitted); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("[T]he district court gave too much weight to [plaintiff's] choice of venue . . . . Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").

### 2.    All Other Factors Are Neutral

The remaining factors are neutral and do not weigh for or against transfer. The compulsory subpoena power for third-party witnesses is the same for both the Austin and Waco Divisions— as explained above (*supra* III.B.1.b.), all 31 of the named inventors appear to be located over 100 miles from both Austin and Waco, and Microsoft is not currently aware of relevant third party

witnesses located in or near either Austin or Waco. Both Divisions are familiar with and equally capable of applying federal patent laws, especially when there is no change in presiding jurist. Moreover, both Divisions are within the Plaintiff's chosen District. Regardless of the Division, neither would present a conflict of law or require the application of foreign law. And to Microsoft's knowledge, there are no administrative difficulties flowing from court congestion.

## IV.     CONCLUSION

The Waco Division has no ties to this lawsuit, and the Austin Division is clearly more convenient. Thus, this case should be transferred to the Austin Division. Microsoft respectfully asks that the Court grant this Motion.

Respectfully submitted,

Date: October 2, 2020

*/s/ Barry K. Shelton*
Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Telephone: (512) 263-2165
Fax: (512) 263-2166
bshelton@sheltoncoburn.com

*Of Counsel*

Michael J. Bettinger
Irene Yang
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Fax: (415) 772-7400
mbettinger@sidley.com
irene.yang@sidley.com

Richard A. Cederoth
John W. McBride
SIDLEY AUSTIN LLP

15

1 South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
rcederoth@sidley.com
jwmcbride@sidley.com

*Attorneys for Defendant Microsoft Corporation*

### <u>CERTIFICATE OF SERVICE</u>

I certify that on October 2, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to all counsel of

record as identified below.


*/s/ Barry K. Shelton*
Barry K. Shelton

17